Kamran Fattahi (SBN 150343)
LAW OFFICES OF KAMRAN FATTAHI
(a professional corporation)
15303 Ventura Blvd., Suite 900
Sherman Oaks, California 91403
Tel: 818-205-0140
Fax: 818-205-0145
Email: Kamran@FattahiLaw.com

Attorneys for Plaintiff,
Netbus Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETBUS INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PHARMAVITE LLC, a California limited liability company,<br><br>Defendant. | Civil Case No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT RE TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

For its Complaint, Plaintiff Netbus Inc. ("Netbus") alleges against Defendant Pharmavite LLC ("Pharmavite") as follows:

**Jurisdiction and Venue**

1. This civil action is for declaratory judgment that Netbus' use of the trademark **"NatureM.D." (or its earlier version "NatureMD")** in marketing and selling its dietary and nutritional supplements is lawful and has <u>not</u> resulted in acts of trademark infringement, false designation of origin, misrepresentation, unfair competition, passing off, or dilution in violation of any rights asserted by Phamavite in its use of the mark NATURE MADE under federal trademark law, the Lanham Act, 15 U.S.C. §1051 *et seq.*, or under California statutory or common law.

COMPLAINT FOR TRADEMARK INFRINGEMENT AND
UNFAIR COMPETITION

2. This Court has jurisdiction over the subject matter of this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201-2202; the Lanham Act, 15 U.S.C. § 1121, 15 U.S.C. §1051 et seq.; and 28 U.S.C. §1338 (trademarks). The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391, including 28 U.S.C. §§ 1391(b) and (c), in that on information and belief, Plaintiff and Defendant are subject to jurisdiction and are doing business in this district; Pharmavite is a California LLC with its principal place of business in this judicial district; Netbus is a Delaware corporation with its principal place of business in Newark, California, and also having employees in this judicial district; the parties have sold and sell goods under their respective marks to customers in this judicial district; and/or a substantial part of the events giving rise to the claims hereunder occurred in this judicial district; and/or a substantial part of the property that is the subject of the action is situated in this judicial district.

## The Parties

4. Plaintiff Netbus Inc. ("Netbus") is a corporation organized under the laws of the State of Delaware with a principal place of business at 39773 Seal Drive, Newark, California 94560. Netbus also has employees located in this judicial district and conducts business in this judicial district.

5. On information and belief, Defendant Pharmavite LLC ("Pharmavite") is a limited liability company organized under the laws of the State of California with a principal place of business at 8531 Fallbrook Avenue, West Hills, California 91304.

## GENERAL ALLEGATIONS

**Plaintiff's Business and Its "NatureM.D." Mark**

6. Netbus is engaged in the marketing, advertising, and selling of nutritional and dietary supplements in the United States.

7. Netbus is the owner of the "NatureM.D." trademark which is the subject of Application Serial No. 88/905,682 for registration of the "NatureM.D." mark which was

filed on May 7, 2020 with the United States Patent and Trademark Office (PTO) in connection with "dietary and nutritional supplements" in International Class 5 (hereinafter "the '682 Application"). A true and correct copy of the PTO's TESS summary record of the '682 Application is attached hereto as **Exhibit 1**.

8. The '682 Application was originally filed on the basis of intent-to-use of the mark spelled as "NatureMD". Following an examination by the PTO's Examining Attorney, which included a trademark search of third-party marks, the PTO did not find a likelihood of confusion between the "NatureMD" mark and any other federally registered mark or any other mark that was the subject of any pending application, and the "NatureMD" mark was approved by the PTO for publication which took place on August 4, 2020. Netbus then filed a voluntary amendment with the PTO on August 5, 2020 and revised the mark to "NatureM.D." and the amendment was approved by the PTO on September 1, 2020 without requiring the application to be republished.

9. Since the filing of the '682 Application, Netbus has begun marketing and selling in this judicial district dietary and nutritional supplements under the "NatureM.D." mark (or the earlier variation "NatureMD").

10. The dietary and nutritional supplements being advertised and sold under the "NatureM.D." mark are offered under the specific product names and brands of "GutConnect 365," "Synbiotic 365," "Enzyme 365," "RevBiotics," and "NutriProtein." The packaging and advertising of these products also use and display a design logo of the letter "N" with a distinctive leaf design (hereinafter "the N & Leaf logo").

11. Netbus offers these products through direct online sales to customers via the website www.NatureMD.com. Attached as **Exhibit 2** are true and correct copies of pages from this website and exemplars and photographs of the packaging and labels for these Netbus supplements.

12. Netbus advertises its NatureM.D. supplements for the following purposes and benefits: "GutConnect 365" supports digestive health and gut integrity; "Synbiotic 365" supports gut health and weight management; "Enzyme 365" supports digestive

balance and nutrient absorption; "RevBiotics" supports energy, mood and digestive health; and "NutriProtein" supports muscle, metabolism and weight management.

13. Dr. Vincent Pedre, M.D., a prominent and well-known medical doctor, leading gut-health expert, author, and TV personality, is the Chief Wellness Officer for NatureM.D. and is prominently featured as a spokesperson for the NatureM.D. supplements in the marketing and advertising thereof. [See Ex. 2]

14. Netbus' NatureM.D. mark and the associated marketing and information that are provided signify that the supplements include ingredients that are found in **nature**, are sourced from environmentally-friendly practices, are known to offer health benefits, and there is association and collaboration of a **medical doctor** with the creation, development, and marketing of such products.

**Pharmavite's NATURE MADE Mark, Opposition Against the '682 Application, and Its Threats of Legal Action**

15. On information and belief, Pharmavite is engaged in manufacturing and selling of vitamins, minerals, and dietary supplements under the NATURE MADE mark in the United States, including in this judicial district.

16. Attached hereto as **Exhibit 3** are true and correct copies of photographs of the packaging (front and back) of representative samples of several Pharmavite products sold under the NATURE MADE mark.

17. On July 1, 2020, Pharmavite's attorney sent a cease and desist letter to Netbus' attorney, claiming that Pharmavite owns U.S. trademark registrations for the mark NATURE MADE in connection with dietary and nutritional supplements. In that cease and desist letter, Pharmavite referred to Netbus' '682 Application and alleged that "Netbus' use of NATUREMD would infringe the industry-leading NATURE MADE brand, and will otherwise detrimentally affect our client's long-standing prior rights in NATURE MADE on dietary supplement goods. Pharmavite is therefore compelled to take action against your use or proposed use of this mark." Pharmavite claimed that NATUREMD would likely be pronounced by consumers as "Nature Med" which

purportedly could easily be confused with "Nature Made" when calling for the goods orally.

18. The Pharmavite attorney's letter continued: "Netbus should also understand that any sale of NATUREMD is an infringement of our client's mark, and supports a claim for damages based on the same. We therefore also require that any use of NATUREMD cease immediately." Unless Netbus would accede to all of Pharmavite's demands that Netbus withdraw its application and confirm that it would not use NATUREMD or any other fomatives of NATURE and MD, Pharmavite further threatened to move forward with "oppositions or other proceedings."

19. Netbus' attorney responded with a letter dated July 13, 2020, disputing and denying Pharmavite' allegations of trademark infringement. Netbus' attorney reminded that Pharmavite does not have a monopoly on all marks that include the word NATURE, that the parties' respective marks have different spellings, appearances, sounds, meanings, and commercial impressions. Netbus's attorney also explained that it was far-fetched and there was no reasonable basis for Pharmavite to assert that consumers would somehow just throw in a letter "E" between the letters "MD" which is a well-known abbreviation for "Medical Doctor." Netbus also pointed out that it had filed a voluntary amendment with the PTO in the '682 Application to change "MD" to "M.D." such that the mark would be spelled as "NatureM.D." which "amendment virtually makes it impossible for any reasonable consumer to pronounce or view Netbus' mark as 'NATUREMED' as you [Pharmavite] have asserted."

20. In a second letter dated July 29, 2020, Pharmavite's attorney disagreed with Netbus' contentions and restated Pharmavite's demands that Netbus "must promptly withdraw the NATUREMD application, and cease any use of that mark, NATUREM.D., or similar marks."

21. True and correct copies of the above-referenced cease and desist letters by Pharmavite and Netbus' response letter are attached hereto as **Exhibit 4**.

22. On September 3, 2020 Pharmavite filed and initiated an opposition

proceeding under Opposition No. 91264583 before the Trademark Trial and Appeal Board (TTAB) against the '682 Application for the "NatureM.D." mark based on allegations of likelihood of confusion and dilution of the distinctive quality of Pharmavite's NATURE MADE marks. A true and correct copy of Pharmavite's Notice of Opposition filed in the opposition proceeding is attached hereto as **Exhibit 5**.

23. In the referenced opposition proceeding, Pharmavite has pleaded several of its federal registrations for its NATURE MADE marks, namely: U.S. Registration Nos. 1,963,505 for NATURE MADE; Reg. 3,520,080 for NATURE MADE & Design; Reg. 5,951,312 for NATURE MADE & Design; Reg. 3,861,557 for NATURE MADE IMMUNI-C; and Reg. 4,321,748 for NATURE MADE VITAMELTS.

24. Netbus has filed an Answer to the Notice of Opposition, denying the salient allegations of Pharmavite's trademark infringement and dilution claims. A true and correct copy of Netbus' Answer to the Notice of opposition is attached as **Exhibit 6**.

25. The TTAB opposition proceeding is currently pending, but the TTAB will likely suspend that proceeding pending the outcome of this civil action.

26. In response to Pharmavite's threats, Netbus has refused to cease any use of the "NatureM.D." (or "NatureMD") mark in connection with dietary and nutritional supplements. In fact, Netbus has begun to market and sell dietary and nutritional supplements under the "NatureM.D." mark (or "NatureMD") and continues to do so.

27. No matter how well-known the NATURE MADE brand may or may not be, Phamavite does not have a monopoly on all marks that include the word NATURE, even if they may be used in connection with dietary and nutritional supplements.

28. There are numerous third-parties who have registered and/or are using in the marketplace marks and brands that include the word NATURE (or variations) in connection with dietary and nutritional supplements or related goods/services.

29. Inherent in the meaning and relationship of the word NATURE to dietary and nutritional supplements, the word NATURE is not strong in a trademark sense or significance. Furthermore, as a result of the widespread registration and use by third-

parties of marks and brands that include the word NATURE (or variations) in connection with dietary and nutritional supplements or related goods/services, consumers and purchasers have come to be able to consider the entirety of the marks, including differences between other portions of the marks, and they also look to a variety of other factors surrounding the presentation, marketing and sales of such products to be able to distinguish and understand that they do not share the same source, origin, sponsorship, or affiliation.

30. Netbus' "NatureM.D." mark (or "NatureMD" or similar variations) and Pharmavite's NATURE MADE marks have different spellings, appearances, sounds, meanings, and commercial impressions, and there is no likelihood of confusion between the parties' respective marks.

31. The packaging, labeling, presentation, price points, marketing, sale and purchasing conditions of Netbus' products as offered and sold in the marketplace under "NatureM.D." (or "NatureMD" or similar variations) are very different and have different commercial impressions from those of Pharmavite's NATURE MADE branded products, and there is no likelihood of confusion between the sources, origins, sponsorships, or affiliations of the parties' respective products or their marks.

32. Pharmavite's allegations, charges, and threats of legal action and litigation, including its claims for damages, are frivolous, lack reasonable factual and/or legal bases, and have been made in bad faith to harm Netbus and its business.

33. Pharmavite's allegations, charges, and threats of legal action and litigation, including its threats and claims for damages, have created a reasonable apprehension in Netbus that Pharmavite will bring legal action against it, and there is an actual and justiciable controversy.

///

## FIRST CAUSE OF ACTION

*(Declaratory Judgment of No Trademark Infringement, No Unfair Competition, No False Designation of Origin, No Misrepresentation, No Passing Off, And No Dilution - The Lanham Act, 15 U.S.C. §1125(a), §1125( c); Calif. Bus. & Prof. Code §17200 et seq.; and California Common Law)*

34. Netbus incorporates by reference as part of this cause of action the allegations contained in paragraphs 1 through 33 above.

35. Netbus' "NatureM.D." mark (or "NatureMD" mark or similar variation) is not likely to cause confusion as to source, sponsorship, or affiliation with Pharmavite's NATURE MADE marks, or other purported registered or unregistered marks of Pharmavite.

36. Netbus' use of "NatureM.D." mark (or "NatureMD" mark or similar variation) does not infringe Pharmavite's purported trademark rights in the NATURE MADE marks, or other purported registered or unregistered marks of Pharmavite.

37. Netbus' use of "NatureM.D." mark (or "NatureMD" mark or similar variation) does not constitute unfair competition, false designation of origin, false or misleading description, misrepresentation, or passing off in violation of Pharmavite's purported trade identity rights under the Lanham Act or any state laws.

38. Pharmavite's NATURE MADE marks are not "famous" under and within the meaning of 15 U.S.C. §1125(c).

39. Netbus' use of "NatureM.D." mark (or "NatureMD" mark or similar variation) does not dilute Pharmavite's purported trademark rights in the NATURE MADE marks or any other mark under the Lanham Act or any state laws.

40. Netbus is entitled to judgment declaring that it has not committed trademark infringement, false designation of origin, misrepresentation, unfair competition, passing off, and/or trademark dilution in violation of any federal (The Lanham Act, 15 U.S.C. § 1051 *et seq.*; 15 U.S.C. § 1125(a); 15 U.S.C. § 1125(c)), state, or common law trademark or trade identity rights asserted by Pharmavite.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Netbus Inc. prays for and requests:

I. Judgment declaring that there is no likelihood of confusion between Netbus' "NatureM.D." mark (or "NatureMD or other similar variation) and Pharmavite's NATURE MADE marks (or other mark asserted by Pharmavite).

II. Judgment declaring that Netbus has <u>not</u> committed trademark infringement, false designation of origin, misrepresentation, unfair competition, passing off, trademark dilution, and has <u>not</u> violated any rights asserted by Pharmavite in and to the NATURE MADE marks, or other purported trade identity rights asserted by Pharmavite.

III. An order enjoining Pharmavite, its officers, directors, owners, employees, servants, affiliates, partners, and agents, and all those in privity with or in active concert or participation with it from violating or interfering with Netbus' rights by way of:

    A. Accusing Netbus and/or any of its officers, owners, employees, or agents of infringing or otherwise violating any trademarks or other trade identity rights claimed to be held by Pharmavite.

    B. Communicating to others claims that Netbus and/or any of its officers, owners, employees, or agents have committed trademark infringement, false designation of origin, misrepresentation, unfair competition, passing off, trademark dilution, or otherwise violated any rights held by Pharmavite.

    C. Coercing, inducing or intimidating third parties not to do business with Netbus; communicating to others false or misleading information about Netbus; communicating to others not to purchase, sell, market or distribute Netbus' products, including those that carry the "NatureM.D." mark (or other similar variation).

D. An award to Netbus of its costs and attorneys' fees in this action.

E. All other relief as the Court deems just and proper.

Respectfully submitted,

Dated:  February 8, 2021       /s/Kamran Fattahi

Kamran Fattahi, Esq.
LAW OFFICES OF KAMRAN FATTAHI
Attorneys for Plaintiff, Netbus Inc.

## **DEMAND FOR JURY TRIAL**

Plaintiff Netbus Inc. hereby demands a trial by jury of all matters so triable.

Respectfully submitted,

Dated:  February 8, 2021       /s/Kamran Fattahi

Kamran Fattahi, Esq.
LAW OFFICES OF KAMRAN FATTAHI
Attorneys for Plaintiff, Netbus Inc.